# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| STEWART TITLE GUARANTY COMPANY, | : | CASE NO. 04-10783-GAO |
| Plaintiff, | : | |
| v. | : | **DEFENDENTS, UBS PRINCIPAL FINANCE LLC, I-PARK GROVE WILLOW LLC AND I-PARK WEST SEYON LLC'S ANSWER, COUNTERCLAIM AND AFFIRMATIVE DEFENSES** |
| UBS PRINCIPAL FINANCE LLC, I-PARK GROVE WILLOW LLC, I-PARK WEST SEYON LLC, and CHICAGO TITLE INSURANCE COMPANY, | : : : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Defendants, UBS Principal Finance LLC ("UBS"), I-Park Grove Willow LLC ("Grove Willow") and I-Park West Seyon LLC ("West Seyon") (collectively, "Defendants"), hereby answer the allegations of Plaintiff, Stewart Title Guaranty Company's ("Stewart"), First Amended Complaint as follows:

I.      Introduction

This Paragraph states conclusions of law and Plaintiff's intention to seek certain relief from this Court and makes no allegations against Defendants. Accordingly, no response is required by Defendants.

II.     The Parties

1.     Defendants lack information or knowledge sufficient to form a belief as to the state of Plaintiff's incorporation, but admit that Plaintiff has a place of business in Houston, Texas.

2.     Defendants admit the allegations contained in Paragraph 2.

3.     Except to admit that Grove Willow is a Delaware limited liability company, which maintains an office in New York, Defendants deny the allegations contained in Paragraph 3.

4.     Except to admit that West Seyon is a Delaware limited liability company, which maintains an office in New York, Defendants deny the allegations contained in Paragraph 4.

5.     Defendants admit the allegations contained in Paragraph 5.

6.     Defendants lack information or knowledge sufficient to form a belief as to the state of Chicago Title Insurance Company's ("Chicago") incorporation, but admit that Chicago has a place of business in Chicago, Illinois.

III.     Jurisdiction

7.     This Paragraph calls for a legal conclusion and, therefore, no response is required.

8.     This Paragraph calls for a legal conclusion and, therefore, no response is required.

IV.    <u>Facts</u>

A.    **The Underlying Loans and Title Insurance Policies**

9.    Defendants admit the allegations contained in Paragraph 9, except to state that Defendants are without sufficient knowledge or information to admit or deny whether the site is the former Raytheon Plant.

10.    Except to admit that UBS entered into a loan transaction with Grove Willow LLC relating to the site of a former Raytheon plant, Defendants are either without sufficient knowledge or information to respond to the allegations contained in Paragraph 10, or the allegations are not asserted against Defendants and, therefore, no response is required by Defendants.

11.    Defendants neither admit nor deny the allegations contained in Paragraph 11, and instead refer this Court and the Plaintiff to the First Policy for a true and accurate interpretation of its terms.

12.    Except to admit that on or about February 28, 2001, Grove Willow sold a portion of the Property to West Seyon LLC, Defendants neither admit nor deny the allegations contained in Paragraph 12, and instead refer this Court and the Plaintiff to the West Seyon Mortgage for a true and accurate interpretation of its terms.

13.    Except to admit that on or about February 28, 2001, Grove Willow executed an Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Fixture Filing,

3

Defendants neither admit nor deny the allegations contained in Paragraph 13, and refer this Court and the Plaintiff to the "Amended Mortgage" for a true and accurate interpretation of its terms.

14.    Defendants neither admit nor deny the allegations contained in Paragraph 14, and instead refer this Court and the Plaintiff to the Second Policy for a true and accurate interpretation of its terms.

15.    Defendants neither admit nor deny the allegations contained in Paragraph 15, and instead refer this Court and the Plaintiff to the First Policy and BSC Plan for a true and accurate interpretation of their terms.

16.    Defendants neither admit nor deny the allegations contained in Paragraph 16, and instead refer this Court and the Plaintiff to the Second Policy and BSC Plan for a true and accurate interpretation of their terms.

17.    Defendants neither admit nor deny the allegations contained in Paragraph 17, and instead refer this Court and the Plaintiff to the Policies for a true and accurate interpretation of their terms.

**B.    The Foreclosures**

18.    Except to admit that UBS executed an Assignment of Mortgage to I-Park Grove Willow LLC, Defendants are without sufficient knowledge or belief as to what the Middlesex County District Registry of Deed and the Middlesex County Registry District of the Land Court revealed.

4

19.     Except to admit that UBS executed an assignment of the West Seyon LLC Mortgage to I-Park West Seyon LLC, Defendants are without sufficient knowledge or belief as to what the Registry of Deeds revealed.

20.     Defendants admit the allegations contained in Paragraph 20.

21.     Defendants admit the allegations contained in Paragraph 21.

C.     **UBS's Claims**

22.     Defendants neither admit nor deny the allegations contained in Paragraph 22, and instead refer this Court and the Plaintiff to those certain letters dated March 3, 2003, for a true and accurate description of their terms.

23.     Defendants neither admit nor deny the allegations contained in Paragraph 23, and instead refer this Court and the Plaintiff to that certain letter dated March 13, 2003, for a true and accurate description of its terms.

D.     **Stewart's Investigation**

24.     Defendants are without sufficient knowledge or information to admit or deny the allegations contained in Paragraph 24, and leaves Plaintiff to its proofs thereon.

25.     Defendants are without sufficient knowledge or information to admit or deny the allegations contained in Paragraph 25, and leaves Plaintiff to its proofs thereon.

26.     Defendants are without sufficient knowledge or information to admit or deny the allegations contained in Paragraph 26, and leaves Plaintiff to its proofs thereon.

### E.    UBS's Lack of Cooperation

27.    Except to refer this Court and Plaintiff to those certain October 29, 2003, and July 3, 2003, letters for a true and accurate description of their terms, Defendants deny the allegations contained in Paragraph 27.

28.    Defendants neither admit nor deny the allegations contained in Paragraph 28, and instead refer this Court and Plaintiff to the language of the Policies for a true and accurate interpretation of their terms.

29.    Defendants neither admit nor deny the allegations contained in Paragraph 29, and instead refer this Court and Plaintiff to the language of the Policies for a true and accurate interpretation of their terms. Notwithstanding, Defendants affirmatively state that they complied with all requirements pursuant to the Policies.

### F.    The Alleged Loss

30.    Defendants neither admit nor deny the allegations contained in Paragraph 30, and instead refer this Court and Plaintiff to the language of the Policies for a true and accurate interpretation of their terms.

31.    Defendants neither admit nor deny the allegations contained in Paragraph 31, and instead refer this Court and Plaintiff to that certain October 13, 2003, letter for a true and accurate description of its terms.

32.    Defendants neither admit nor deny the allegations contained in Paragraph 32, and instead refer this Court and Plaintiff to that certain October 13, 2003, letter for a true and accurate description of its terms.

33.    Defendants neither admit nor deny the allegations contained in Paragraph 33, and instead refer this Court and Plaintiff to that certain October 13, 2003 letter for a true and accurate description of its terms.  With regard to the last sentence of Paragraph 33, Defendants deny the allegations.

34.    Defendants neither admit nor deny the allegations contained in Paragraph 34, and instead refer this Court and Plaintiff to that certain October 13, 2003, letter for a true and accurate description of its terms.

35.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35, and leaves Plaintiff to its proofs thereon.

36.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36, and leaves Plaintiff to its proofs thereon.

37.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37, and leaves Plaintiff to its proofs thereon.

38.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38, and leaves Plaintiff to its proofs thereon.

G.    **Stewart's Tender under the Policies**

39.    Defendants neither admit nor deny the allegations contained in Paragraph 39, and instead refer this Court and Plaintiff to the language of the Policies for a true and accurate interpretation of their terms.

40.    Except to admit that Stewart tendered two checks in the amount of $365,000, without restriction and which allowed the insured claimants to negotiate the checks without waiver of their right to assert that additional sums may be owed under the Policies, Defendants neither admit nor deny the allegations contained in Paragraph 40, and instead refer this Court and Plaintiff to that certain November 6, 2003 letter for a true and accurate description of its terms.

41.    Defendants admit the allegations contained in Paragraph 41.

42.    Defendants admit the allegations contained in Paragraph 42.

43.    The allegations contained in Paragraph 43 call for a legal conclusion and, therefore, no response is required by Defendants.

44.    Except to state that Stewart has never requested any information from UBS before the filing of this action, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44.

45.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45, and leaves Plaintiff to its proofs thereon.

46.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46, and leaves Plaintiff to its proofs thereon.

**COUNT I**
Declaratory Judgment as to the Identities
of the Insureds Under the Policies

47.     Defendants repeat and reallege Paragraphs 1 through 46 of their answer as if fully set forth herein.

48.     This Paragraph states Plaintiff's requested relief from the Court and, therefore, no response is required by Defendants.

**COUNT II**
Termination of Stewart's Obligations Under the Policies
for UBS's Failure to Submit a Proper Proof of Loss

49.     Defendants repeat and reallege Paragraphs 1 through 48 of their answer as if fully set forth herein.

50.     Defendants deny the allegations contained in Paragraph 50.

51.     Defendants deny the allegations contained in Paragraph 51.

52.     Defendants deny the allegations contained in Paragraph 52.

**COUNT III**
Termination of Stewart's Obligations Under the Policies for
UBS's Failure to Provide Documents and Information to Stewart

53.     Defendants repeat and reallege Paragraphs 1 through 52 of their answer as if fully set forth herein.

54.     Defendants deny the allegations contained in Paragraph 54.

9

55.    Defendants deny the allegations contained in Paragraph 55.

## COUNT IV
Declaratory Judgment as to the Loss or Damage
Compensable Under the Policies

56.    Defendants repeat and reallege Paragraphs 1 through 55 of their answer as if fully set forth herein.

57.    Defendants deny the allegations contained in Paragraph 57.

58.    This Paragraph states Plaintiff's requested relief from the Court and, therefore, no response is required by Defendants.

## COUNT V
Declaratory Judgment that Stewart Fulfilled its Obligations Under the Policies
by its Tender of the Maximum Amount of the Loss or Damage

59.    Defendants repeat and reallege Paragraphs 1 through 58 of their answer as if fully set forth herein.

60.    Defendants deny the allegations contained in Paragraph 60.

61.    This Paragraph states Plaintiff's requested relief from the Court and, therefore, no response is required by Defendants.

## COUNT VI
Declaratory Judgment as to the Parties' Rights
as Affected by any Settlement Payments

10

62.     Defendants neither admit nor deny the allegations contained in Paragraph 62, and instead refer this Court and Plaintiff to the language of the Policies for a true and accurate interpretation of their terms.

63.     The allegations contained in Paragraph 63 are not asserted against Defendants and, therefore, no response is required by Defendants.

64.     This Paragraph states Plaintiff's requested relief from the Court and, therefore, no response is required by Defendants.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed for failure to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by its own breaches of the Policies.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed for failure of consideration.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver, estoppel and/or laches.

11

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the doctrine of payment and release.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred for failure to fulfill conditions precedent to Defendants' performance.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is aware that Defendants complied with all its obligations under its agreement with Plaintiff and Plaintiff's claims, therefore, are frivolous.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages, if any, were not proximately caused by the actions or omissions of Defendants.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages, if any, were caused by persons over whom Defendants had no control.

Defendants expressly reserves their rights to assert any other defenses, amend this Answer or to add such additional defenses that may be necessary based upon additional investigation and/or discovery.

WHEREFORE, defendants, UBS Principal Finance LLC, I-Park Grove Willow LLC and I-Park West Seyon LLC, hereby demand judgment against plaintiff, Stewart Title Guaranty

Company, dismissing the First Amended Complaint and each cause of action therein, with prejudice, together with an award of attorneys' fees and costs of suit.

### THE DEFENDANTS HEREBY CLAIM A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

### COUNTERCLAIM

Defendants/Counterclaimants, UBS Principal Finance LLC ("UBS"), I-Park Grove Willow LLC ("Grove Willow") and I-Park West Seyon LLC ("West Seyon")(collectively, "Counterclaimants"), as and for its counterclaim against Stewart Title Guaranty Company allege as follows:

### PARTIES

1.      UBS is a Delaware limited liability company in the business of commercial real estate lending and securitization, which maintains offices located at 1285 Avenue of the Americas, 11th Floor, New York, New York, 10019. UBS also regularly conducts business in the Commonwealth of Massachusetts.

2.      Grove Willow is a Delaware limited liability company, which maintains offices in New York, New York.

3.      West Seyon is a Delaware limited liability company, which maintains offices in New York, New York.

4.      Upon information and belief, Stewart is a corporation organized and existing under the laws of the State of Texas, with a principal place of business at 1980 Post Oak Boulevard, Suite 800, Houston, Texas. Stewart engages in the business of, among other things,

providing title insurance for property owners, lenders and others. Upon information and belief, Stewart regularly conducts business in the Commonwealth of Massachusetts.

## FACTS COMMON TO ALL COUNTS AND BACKGROUND

5.    This action arises as a result of Stewart's failure to pay its proportionate share of Counterclaimants' claims under Stewart Coinsurance Policy Certificate No. 813508, and Stewart's Coinsurance Endorsement No. 00-07-0114.

6.    On or about December 1, 2000, UBS and an entity named Grove Willow LLC ("Grove Willow LLC") entered into a loan transaction whereby Grove Willow LLC borrowed the principal sum of $88,500,000 from UBS (the "Loan"). In connection with the Loan, UBS and Grove Willow LLC entered into a Mortgage, Security Agreement, Assignment of Leases and Fixture Filing (the "Mortgage"), with respect to certain real property (commonly known as certain parcels of land situated in Waltham and Watertown, Middlesex County, Massachusetts, comprised of Lot A (Parcels 1, 3, 4, 5, 6, 7, 8, 9, 10, 16 and 17), Lot B (Parcel 2), Lot C (Parcels 11, 12, 13, 14 and 15), and Lot D (Parcel 18), as more particularly shown on Exhibit A-1 attached to Policy No. 2051-25376) owned by Grove Willow LLC (the "Property"). The real property at issue in this Counterclaim is located within the security identified above granted to UBS as partial consideration for the Loan.

7.    To protect its interest in the Property, UBS purchased title insurance from Chicago Title Insurance Company ("Chicago") and Stewart simultaneous with and in connection with the Loan to Grove Willow LLC. Specifically, UBS purchased Policy No. 2051-25376 from

Chicago in the face amount of $44,250,000 ("Chicago's First Policy"). A copy of Chicago's

First Policy is attached to Plaintiff's complaint as Exhibit B.

8.     Pursuant to an endorsement, bearing Policy Certificate No. 813508, Stewart also

issued title insurance to UBS in the amount of $44,250,000, and adopted as its own policy of title

insurance, the provisions of Chicago's First Policy, and all conditions and schedules contained

therein ("Stewart's First Policy"). As a result of the procurement of Chicago's First Policy, and

Stewart's First Policy, UBS purchased from Chicago and Stewart title insurance coverage in the

aggregate amount of $88,500,000.

9.     Chicago's First Policy contains an endorsement entitled "Land Same as Survey

Endorsement." The endorsement provides as follows:

> The Company hereby assures the Insured that said land is the same
> as that delineated on the plat of a survey made by the BSC Group
> designated Job No. 4-5767.00 dated August 9, 1999, revised
> October 18, 1999, December 26, 1999, December 28, 1999 and
> updated November 6, 2000.
>
> The Company hereby insures said Insured against loss which said
> Insured shall sustain in the event said assurances herein shall prove
> to be incorrect.

(emphasis added).

10.     Stewart's First Policy also adopted by reference the "Land Same as Survey

Endorsement."

11.     On February 28, 2001, the Mortgage and other loan documents were amended for

the primary reason of creating two (2) separate loans in the amounts of $55,000,000 and

$33,500,000. Such mortgage modification resulted in the establishment of two separate cross-

collateralized and cross-defaulted mortgages. One mortgage covered certain property as defined herein, which property remained owned by Grove Willow LLC. The remaining property was conveyed to an entity known as West Seyon LLC, a related entity with the same principals, and covered the remaining parcels of real property described in the original Mortgage. The transaction resulted in a Split, Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Fixture filing from West Seyon LLC ("West Seyon LLC") in favor of UBS (the "Split Mortgage"). Pursuant to the Split Mortgage Agreement, the original mortgage debt of $88,500,000 was divided into two loans as follows: (1) a $55,000,000 loan to Grove Willow LLC; and (2) a $33,500,000 loan to West Seyon LLC.

12.     To protect its interest in the Property, pursuant to the Split Mortgage, UBS purchased from Chicago Policy No. 2151-25005 in the face amount of $16,750,000 ("Chicago's Second Policy"). A copy of Chicago's Second Policy is attached to Plaintiff's complaint as Exhibit E.

13.     Pursuant to an endorsement, bearing Policy Endorsement No. 00-07-0114, Stewart also issued title insurance to UBS in the amount of $16,750,000, and adopted as its own policy of title insurance, the provisions of Chicago's Second Policy, and all conditions and schedules contained therein ("Stewart's Second Policy"). As a result of the procurement of Chicago's Second Policy, and Stewart's Second Policy, UBS purchased from Chicago and Stewart title insurance coverage in the aggregate amount of $33,500,000.

14.     Chicago's Second Policy contains an endorsement entitled "Land Same as Survey Endorsement." This endorsement provides the following:

The Company hereby assures the Insured that said land is the same as that delineated on survey entitled "Survey entitled [sic] "Plan of Land in Waltham/Watertown Massachusetts (Middlesex County) West of Seyon Street" dated January 25, 2001, revised February 5, 2001 by BSC Group Scale 1" = 50' and Survey entitled "Plan of Land in Waltham/Watertown Massachusetts (Middlesex County) East of Seyon Street" dated January 25, 2001 by BSC Group Scale 1" = 50'.

The Company hereby insures said Insured against loss which said Insured shall sustain in the event said assurances herein shall prove to be incorrect.

(emphasis added)

15.    Stewart's Second Policy also adopted by reference the "Land Same as Survey Endorsement."

16.    As a result of defaults under the Mortgage and Split Mortgage, UBS declared a default under the applicable loan documents and was forced to proceed to foreclose on the Property. In February 2003, affiliates of UBS, I-Park Grove Willow LLC and I-Park West Seyon LLC, took title to the Property through a non-judicial foreclosure sale.

17.    In or around early 2003, Counterclaimants received notice that surveys made by the BSC Group with respect to the Property (collectively, the "Surveys"), which were incorporated by reference into the Land Same as Survey Endorsements to Chicago's First and Second Policies and Stewart's First and Second Policies (collectively, the "Policies"), were materially incorrect. In particular, and without limitation, portions of the metes and bounds descriptions were incorrectly plotted on the Surveys. As a result, it appears that Counterclaimants do not hold title to certain portions of the Property insured by the Policies because title to these portions of the Property are actually held by abutting landowners.

17

18.     On March 3, 2003, in accordance with the terms of the Policies, Counterclaimants provided Stewart and Chicago with proper notice of its claims under the Policies.

19.     On March 13, 2003, in response to Counterclaimants' March 3, 2003 notice, Stewart's counsel issued a written acknowledgement of Counterclaimants' claims.

20.     On April 9, 2003, in response to Counterclaimants' March 3, 2003 notice, Chicago's counsel issued a written acknowledgement of its liability under the Policies.

21.     In or about June 2003, Chicago and Counterclaimants entered into a Standstill Agreement, pursuant to which Chicago paid Counterclaimants an "Initial Payment" of $500,000, which amount Counterclaimants agreed to credit against any liability of Chicago under the Policies.

22.     In or about November 6, 2003, Stewart issued a written acknowledgment of its liability under the Policies, and submitted to Counterclaimants two checks totaling $365,000, the amount Stewart determined to be its liability under the Policies.

23.     After extensive research and investigation, on or about April 22, 2004, Counterclaimants and Chicago settled their claims whereby Chicago paid to Counterclaimants an additional $805,000, representing Chicago's fifty percent share of liability under the Policies.

24.     Stewart continues to wrongfully refuse and deny the full extent of its liability to Counterclaimants under the Policies.

### FIRST COUNT
**(Breach of Contract)**

25.     Counterclaimants repeat and reallege each and every allegation contained in Paragraphs 1 through 24 as if set forth at length herein.

26.     Counterclaimants have fulfilled all of their obligations pursuant to the Policies.

27.     Stewart has breached the terms of the Policies by willfully failing to pay its proportionate share of liability under the Policies to Counterclaimants and/or cure the defect in title.

28.     As a result of the failure of Stewart to make full payment of its proportionate share to Counterclaimants and/or cure the defect in title, Counterclaimants have suffered damages in an amount to be determined at trial.

### SECOND COUNT
**(Breach of the Implied Covenant
of Good Faith and Fair Dealing)**

29.     Counterclaimants repeat and reallege each and every allegation contained in Paragraphs 1 through 28 as if set forth at length herein.

30.     Despite its acknowledgment of liability, Stewart has willfully and wantonly failed to pay its proportionate share of Counterclaimants' claims due and owing under the Policies.

31.     The failure of Stewart to pay its proportionate share of Counterclaimants' claims pursuant to the Policies constitutes a breach of the implied covenant of good faith and fair dealing, contained in every commercial agreement.

32.     As a result, Counterclaimants have suffered damages in an amount to be determined at trial.

### THIRD COUNT
### (Declaratory Judgment

33.     Counterclaimants repeat and reallege each and every allegation contained in Paragraphs 1 through 32 as if set forth at length herein.

34.     Counterclaimants seek a declaratory judgment with respect to the following justiciable controversy:

a.   Pursuant to the Policies, Counterclaimants are entitled to insurance coverage and receipt of payment of any and all claims and damages resulting from its lack of title to portions of the Property insured by the Policies; and

b.   Chicago and Stewart have acknowledged coverage of Counterclaimants' claims under the Policies, Counterclaimants provided Chicago and Stewart with proper notice, which Chicago has subsequently settled and paid its proportionate share, and Stewart is required to pay its proportionate share of Counterclaimants' claims.

35.     Declaratory judgment is both necessary and proper to set forth and determine the rights and obligations that exist among the parties in connection with the Policies.

36.     Counterclaimants seek judgment declaring that Counterclaimants are entitled to payment by Stewart of its proportionate share of Counterclaimants' claims under the Policies.

WHEREFORE, Counterclaimants, UBS Principal Finance LLC, I-Park Grove Willow LLC and I-Park West Seyon LLC, respectfully request that the Court enter judgment against Stewart Title Guaranty Company as follows:

a.   Declaring that the Policies provide coverage to Counterclaimants for damages resulting from the failure of its title to certain portions of the Property;

b.   Declaring that Counterclaimants are entitled to payment by Stewart of its proportionate share of the claims under the Policies;

c.   Awarding damages to Counterclaimants in an amount to be determined at trial; and

d.   Granting such other and further relief as the Court deems just and equitable.

**THE DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM HEREBY CLAIM A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted:

UBS Principal Finance LLC, I-Park Grove
Willow LLC and I-Park West Seyon LLC

By its Attorneys

**THE MCLAUGHLIN BROTHERS, P.C.**

By: _____
    George A. McLaughlin, III
    BBO No. 544822
    One Beacon Street, 17th Floor
    Boston, MA 02108
    (617) 523-7165


and


**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.**

By: _____
    Leo V. Leyva
    Court Plaza North
    25 Main Street
    Hackensack, NJ 07601

DATED:  June 7, 2004

H:\UBS\SURVEY\PLEADINGS\UBS-Stewart Answer, Counterclaim and Affirmative Defenses.DOC

22

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing document to be served by U.S. mail, postage prepaid, upon Thomas Looney, Bartlett Hackett Feinberg, P.C., 10 High Street, Boston, MA  02110 on this 7th day of June.

George A. McLaughlin, III