UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEWART TITLE GUARANTY COMPANY,<br><br>    Plaintiff, Counter-Claim Defendant, Third-Party Plaintiff,<br><br>v.<br><br>UBS PRINCIPAL FINANCE LLC,<br>I-PARK GROVE WILLOW LLC,<br>I-PARK WEST SEYON LLC,<br><br>    Defendants, Counter-Claim Plaintiffs, and<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>    Defendant, Third-Party Plaintiff,<br><br>v.<br><br>BSC GROUP, INC.,<br><br>    Third-Party Defendant. | Civil Action No. 04-10783-GAO |

## ANSWER AND THIRD-PARTY COMPLAINT[1] OF
## CHICAGO TITLE INSURANCE COMPANY

Defendant Chicago Title Insurance Company ("Chicago Title") answers the First Amended Complaint of plaintiff Stewart Title Guaranty Company ("Stewart Title") as follows:

---

[1] The claims made in the Third-Party Complaint against BSC Group, Inc., are substantively identical to the claims made in an action filed in this Court on January 7, 2005, under the name *Chicago Title Insurance Company v. BSC Group, Inc., et al.*

## FIRST AFFIRMATIVE DEFENSE

For its First Affirmative Defense, Chicago Title states that Count VI of the First Amended Complaint fails to state a claim upon which this Court may grant relief.

## SECOND AFFIRMATIVE DEFENSE

For its Second Affirmative Defense, Chicago Title states that Stewart Title is estopped from bringing Count VI of the First Amended Complaint.

## THIRD AFFIRMATIVE DEFENSE

For its Third Affirmative Defense, Chicago Title states that Stewart Title has waived its claims in Count VI of the First Amended Complaint.

## FOURTH AFFIRMATIVE DEFENSE

For its Fourth Affirmative Defense, Chicago Title states that Stewart Title's claims in Count VI of the First Amended Complaint are barred by the applicable period of limitations and by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

For its Fifth Affirmative Defense, Chicago Title states that it has no liability for Stewart Title's payments to the Defendants under Stewart Title's insurance policies, as Stewart Title volunteered those payments

## SIXTH AFFIRMATIVE DEFENSE

For its Sixth Affirmative Defense, Chicago Title states that it is entitled to set off Stewart Title's liability to Chicago Title against any liability that Chicago Title may have to Stewart Title.

## SEVENTH AFFIRMATIVE DEFENSE

For its Seventh Affirmative Defense, Chicago Title responds to the specific allegations of the First Amended Complaint as follows:

1. Chicago Title is without knowledge or information sufficient to form a belief as to the truth of Stewart Title's assertion that it is a Texas corporation. Chicago Title admits the remaining allegations set forth in ¶ 1 of the First Amended Complaint.

2. Admitted.

3. Chicago Title admits that I-Park Grove Willow LLC is a Delaware limited liability company. Chicago Title is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in ¶ 3 of the First Amended Complaint.

4. Chicago Title admits that I-Park West Seyon LLC is a Delaware limited liability company. Chicago Title is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in ¶ 4 of the First Amended Complaint.

5-8. Admitted.

9. Chicago Title admits that (a) UBS Principal Finance LLC made the loan described in the first sentence of ¶ 9 of the First Amended Complaint, (b) the loan was secured by the Grove Willow Mortgage, and (c) a copy of the Grove Willow Mortgage is attached as Exhibit A to the First Amended Complaint. Chicago Title denies the remaining allegations set forth in ¶ 9 of the First Amended Complaint.

10. Chicago Title admits (a) the allegations set forth in the first sentence of ¶ 10 of the First Amended Complaint and (b) that the loan made by UBS Principal Finance was intended to finance Grove Willow LLC's conversion of a former Raytheon plant to a telecommunications

(Middlesex County) West of Seyon Street" and dated February 5, 2001, are attached as Exhibit G to the First Amended Complaint. Chicago Title denies the remaining allegations of ¶ 16 of the First Amended Complaint.

17.  Chicago Title states that the First and Second Policies speak for themselves. Chicago Title denies the remaining allegations set forth in ¶ 17 of the First Amended Complaint.

18.  Chicago Title admits that UBS Principal Finance executed the Assignment of Mortgage that is attached as part of Exhibit H to the First Amended Complaint. Exhibit H speaks for itself. Chicago Title is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in ¶ 18 of the First Amended Complaint.

19.  Chicago Title admits that (a) UBS Principal Finance executed an assignment of the West Seyon Mortgage, and (b) that assignment is attached as part of Exhibit H to the First Amended Complaint. Exhibit H speaks for itself. Chicago Title is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in ¶ 19 of the First Amended Complaint.

20-21.  Admitted.

22.  Chicago Title admits that (a) UBS Principal Finance sent two letters dated March 3, 2003 to Chicago Title, and (b) copies of those letters are attached as Exhibit K to the First Amended Complaint. The letters speaks for themselves. Chicago Title denies the remaining allegations set forth in ¶ 22 of the First Amended Complaint.

23.  Chicago Title is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 23 of the First Amended Complaint.

24.  Chicago Title is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of ¶ 24 of the First Amended Complaint.

Chicago Title admits that (a) Stewart Title, along with Chicago Title, commissioned a new survey of the Property by Gunther and (b) Stewart Title commissioned an appraisal of the Property by Coleman. Chicago Title denies the remaining allegations set forth in ¶ 24 of the First Amended Complaint.

25. Chicago Title admits that (a) Gunther prepared a plan of the Property dated August 12, 2003, and comparison plans depicting the property lines on the Gunther Plan (in green) and the property line described by a legal description derived from a plan by BSC (in red); (b) a copy of the August 12, 2003, plan is attached as Exhibit M to the First Amended Complaint; and (c) a copy of a comparison plan by Gunther is attached as Exhibit N to the First Amended Complaint. Chicago Title denies the remaining allegations set forth in ¶ 25 of the First Amended Complaint.

26-27. Chicago Title denies that copies of the Grove Willow and Seyon Appraisals are attached as Exhibits "O and P", respectively, to the First Amended Complaint. Chicago Title is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in ¶¶ 26-27 of the First Amended Complaint.

28-30. Chicago Title states that the First and Second Policies speak for themselves.

31. Chicago Title admits that (a) counsel for UBS sent a letter dated October 13, 2003, and (b) a copy of the letter is attached as Exhibit S to the First Amended Complaint. The letter speaks for itself.

32. Admitted.

33. Chicago Title states that Exhibit S to the First Amended Complaint speaks for itself and denies that none of the losses alleged in Exhibit S, if they exist, are compensable under the policies.

34. Chicago Title states that Exhibit S to the First Amended Complaint speaks for itself.

35. Chicago Title is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 35 of the First Amended Complaint.

36-37. Denied.

38. Chicago Title is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 38 of the First Amended Complaint.

39. Chicago Title states that the First and Second Policies speak for themselves.

40. Chicago Title admits the allegations set forth in the first and third sentences of ¶ 40 of the First Amended Complaint. The November 6, 2003 letter speaks for itself.

41-43. Admitted.

44-45. Denied.

46. Chicago Title admits that it is not liable to Stewart Title for contribution because of the payments it has made to UBS. Chicago Title denies the remaining allegations of ¶ 46 of the First Amended Complaint.

47-61. As Stewart Title has stipulated to dismissal of the claims set forth in these paragraphs, Chicago Title will not answer them.

62. Chicago Title states that the First and Second Policies speak for themselves. Chicago Title denies the remaining allegations of ¶ 62 of the First Amended Complaint.

63. Denied.

64. Admitted.

## THIRD-PARTY COMPLAINT

Chicago Title Insurance Company ("Chicago Title"), on its own behalf and as subrogee and assignee of UBS Principal Finance LLC, I-Park Grove Willow LLC and I-Park West Seyon LLC (collectively, "UBS"), brings this third-party complaint against BSC Group, Inc. ("BSC"), to recover damages resulting from BSC's negligent surveys of a property insured by Chicago Title.

### Parties

1. Third-party plaintiff Chicago Title is a Missouri corporation that has its principal place of business in Chicago, Illinois. Chicago Title is in the business of providing title insurance to property owners and financial institutions.

2. Third-party defendant BSC is a Massachusetts corporation that has its principal place of business in Boston, Massachusetts. BSC is in the business of providing professional surveys.

### Jurisdiction and Venue

3. This Court has jurisdiction over this third-party complaint pursuant to 28 U.S.C. § 1332, as Chicago Title and BSC are residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court also has jurisdiction over this third-party complaint pursuant to 28 U.S.C. § 1367, as Chicago Title's claims arise out of the same transaction and occurrence as asserted in the First Amended Complaint of plaintiff/ counterclaim-defendant/third-party plaintiff Stewart Title Guaranty Company ("Stewart Title").

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as BSC resides in this district; a substantial part of the events or omissions giving rise to Chicago Title's claims occurred in this district; and the property that is the subject of this action is in this district.

**Factual Background**

5. Prior to 1999, Raytheon Company ("Raytheon") had acquired various parcels of land in the vicinity of Willow, Grove, Seyon and Farwell Streets and Foundry Avenue in Waltham, Massachusetts, and Pleasant Street in Watertown, Massachusetts (the "Raytheon Property"). The Raytheon Property straddles the Waltham/Watertown town line.

6. Between 1999 and 2001, in the regular course of its business, BSC was commissioned to prepare several surveys of the Raytheon Property, and BSC did prepare several surveys (the "BSC Surveys"). On information and belief, BSC knew that the BSC Surveys were to be used in connection with the sale and/or financing of the Raytheon Property.

7. BSC prepared a survey titled "ALTA/ACSM Land Title Survey in Waltham/Watertown, Massachusetts (Middlesex County) Raytheon Company" dated August 9, 1999, revised October 18, 1999, December 26, 1999, and December 28, 1999 (the "BSC 1999 Survey"). A copy of the BSC 1999 Survey is attached as Exhibit A hereto.

8. BSC prepared a survey titled "ALTA/ACSM Land Title Survey, Waltham/Watertown, 47 Foundry Street, 190 Willow Street, 20 & 28 Seyon Street, 36 River Street, in Waltham/ Watertown, Massachusetts (Middlesex County)," dated August 9, 1999, revised October 18, 1999, December 26, 1999, December 28, 1999 and updated November 6, 2000 (the "BSC 2000 Survey"). A copy of the BSC 2000 Survey is attached as Exhibit B hereto.

9. BSC prepared a survey titled "Plan of Land in Waltham/Watertown, Massachusetts (Middlesex County) Raytheon Company," dated December 27, 1999, which was recorded with the Middlesex Registry of Deeds as Plan No. 1497 of 1999 (the "BSC Recorded Survey"). A copy of the BSC Recorded Survey is attached as Exhibit C hereto.

10. BSC prepared a survey titled "Plan of Land in Waltham, Massachusetts (Middlesex County) West of Seyon Street," dated February 5, 2001 (the "BSC West of Seyon Survey"). A copy of the BSC West of Seyon Survey is attached as Exhibit D hereto.

11. BSC prepared a survey titled "Plan of Land in Waltham/Watertown, Massachusetts (Middlesex County) East of Seyon Street," dated February 5, 2001 (the "BSC East of Seyon Survey"). A copy of the BSC East of Seyon Survey is attached as Exhibit E hereto.

12. In 1999, BSC certified the BSC 1999 Survey to Chicago Title.

13. In 2000 and 2001, BSC certified the BSC 2000 Survey, the BSC West of Seyon Survey, and the BSC East of Seyon Survey to UBS Principal Finance and Chicago Title.

14. BSC's certifications stated, among other things, that the surveys "correctly show[] (i) the facts found at the time of the survey, (ii) the location of all buildings, structures and other improvements situated on the above premises, [and] (iii) the course and measured distances of the exterior property lines of the premises and any setbacks or easements located on or affecting the said premises."

21. BSC inaccurately determined the property lines of the Raytheon Property, inaccurately plotted portions of the metes and bounds descriptions on the BSC Surveys, inaccurately plotted the location of buildings and improvements on the Raytheon Property, and failed to show the true facts relating to the Raytheon Property at the time of its surveys, all causing its certifications to UBS Principal Finance and Chicago Title to be false.

15. The BSC Surveys formed the basis for the description of a property (the "Deeded Property") that is not the Raytheon Property but which nevertheless appeared in (a) a deed by which Raytheon (intending to convey the Raytheon Property) conveyed the Deeded Property to

~BOST1:311138.v4
220130-32

10

Grove Willow LLC; (b) a mortgage from Grove Willow LLC (intending to mortgage the Raytheon Property) to Lehman Brothers Holdings Inc., granting a security interest in the Deeded Property; (c) "Schedule A" of a policy of title insurance issued by Chicago Title to Lehman Brothers Holdings Inc. insuring that mortgage (the "Lehman Brothers Policy"); (d) a deed by which Grove Willow LLC (intending to convey a portion of the Raytheon Property) subsequently conveyed a portion of the Deeded Property to West Seyon LLC; (e) mortgages from Grove Willow LLC and West Seyon LLC (each intending to mortgage parcels comprising the Raytheon Property) to UBS Principal Finance, granting a security interest in the Deeded Property; and (f) "Schedule A" of two policies (the "UBS Policies") of title insurance issued by Chicago Title to UBS Principal Finance insuring those mortgages. The UBS Policies are Nos. 2051-25376, dated December 19, 2000, in the original amount of $44,250,000, as amended; and 2151-25005, dated March 2, 2001, in the original amount of $16,750,000, as amended. Stewart Title issued co-insurance endorsements in connection with the UBS Policies.

16. The UBS Policies insured that, subject to their terms, conditions and stipulations, UBS Principal Finance held a first lien of record on the Deeded Property as it purportedly had been conveyed to Grove Willow LLC and West Seyon LLC. The Deeded Property comprised Lot A (Parcels 1, 3, 4, 5, 6, 7, 8, 9, 10, 16 and 17), Lot B (Parcel 2), Lot C (Parcels 11, 12, 13, 14 and 15), and Lot D (Parcel 18), as more particularly described in Schedule "A" of the UBS Policies.

17. BSC provided its certifications of the BSC Surveys knowing that UBS Principal Finance would rely upon them in attempting to perfect a security interest in the Raytheon Property and its structures.

18. In 2000 and in 2001, UBS Principal Finance relied upon BSC's certifications of the BSC Surveys in lending funds to Grove Willow LLC and West Seyon LLC, and in attempting to perfect a security interest in the Raytheon Property and its structures.

19. BSC provided its certifications of the BSC Surveys knowing that Chicago Title would rely upon them in issuing the Lehman Brothers and UBS Policies.

20. In 2000 and in 2001, Chicago Title relied upon BSC's certifications of the BSC Surveys in issuing the Lehman Brothers and UBS Policies.

22. BSC failed to exercise reasonable care and competence in preparing the BSC Surveys.

23. BSC failed to exercise reasonable care and competence in certifying the BSC Surveys to UBS Principal Finance and Chicago Title.

24. BSC did not prepare the BSC Surveys in accordance with the standards applicable to an ALTA/ACSM survey and other applicable standards, including, but not limited to, 250 C.M.R. 6.00 et seq.

25. Before 2002, UBS and Chicago Title were unaware that the BSC Surveys were inaccurate, or that BSC's 1999, 2000 and 2001 certifications of the BSC Surveys were false.

26. In February 2003, UBS Principal Finance assigned its interests in the Deeded Property to two special purpose entities, I-Park Grove Willow LLC (assignee of the interests in Lot C) and I-Park West Seyon LLC (assignee of the interests in Lots A, B and D), which then foreclosed on their respective liens. At February 2003 foreclosure auctions, I-Park Grove Willow LLC and I-Park West Seyon LLC purchased the lots in which they had held security interests; they continue to hold record ownership of the fee title.

27. In early 2003, UBS learned that the BSC Surveys contained errors.

28. In March 2003, UBS asserted claims against Chicago Title and Stewart Title under the UBS Policies (the "UBS Claims").

29. UBS concluded that it did not hold title to certain portions of the Deeded Property insured by the UBS Policies, inasmuch as title to those portions was held by abutting property owners. UBS also concluded that the BSC surveys inaccurately portrayed the location of buildings on the Raytheon Property and that errors in the surveys had (a) caused the mislocation of a ground-water treatment system; (b) adversely affected the marketability of the Deeded Property; and (c) required demolition and reconstruction of a portion of a structure on the Deeded Property.

30. UBS originally estimated that it had incurred damages in excess of $4,275,046 on account of the inaccuracies in the BSC Surveys. UBS contended that Stewart Title and Chicago Title were liable to pay UBS in excess of $4,275,046 under the UBS Policies, and that UBS had suffered additional losses, costs and damages on account of the inaccuracies in the BSC Surveys.

31. On April 22, 2004, Chicago Title entered into an agreement with UBS (the "Settlement Agreement") settling Chicago Title's potential liability for the UBS Claims. A redacted copy of the Settlement Agreement is attached as Exhibit F hereto.

32. Pursuant to the Settlement Agreement, Chicago Title has paid UBS in excess of $75,000 with respect to the UBS Claims.

33. Pursuant to the Settlement Agreement, UBS has transferred and assigned to Chicago Title all of its right, title and interest in any and all claims against BSC that relate to the BSC Surveys or the UBS Claims.

## COUNT I
### (Negligent Misrepresentation to Chicago Title)

34. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-33 above as and for this ¶ 34.

35. BSC is in the business of providing professional land surveys.

36. Chicago Title is in the business of providing title insurance to financial institutions.

37. In the course of its business, BSC supplied false information (namely, its certifications of the BSC Surveys) to Chicago Title for its guidance in issuing the Lehman Brothers and UBS Policies.

38. Chicago Title justifiably relied upon BSC's certifications of the BSC Surveys in issuing the Lehman Brothers and UBS Policies.

39. BSC's false certifications of the BSC Surveys caused Chicago Title to issue the Lehman Brothers and UBS Policies. As a result of issuing the Policies, Chicago Title incurred liability to UBS on account of the UBS Claims, which likewise are a result of BSC's false certifications.

40. BSC failed to exercise the reasonable care or competence of a professional land surveyor in certifying the BSC Surveys to Chicago Title.

41. Chicago Title has suffered damages on account of BSC's false certifications of the BSC Surveys.

## COUNT II
### (Negligence as to Chicago Title)

42. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-41 above as and for this ¶ 42.

43. BSC owed a duty to Chicago Title to provide an accurate survey of the Raytheon Property, and an accurate certification of that survey, inasmuch as BSC knew, or should have foreseen, that Chicago Title would rely upon the BSC Surveys and BSC's certifications of the BSC Surveys in issuing the Lehman Brothers and UBS Policies.

44. BSC failed to provide an accurate survey of the Raytheon Property, and an accurate certification of that survey, to Chicago Title.

45. BSC's negligent preparation and certification of the BSC Surveys caused Chicago Title to suffer damages.

## COUNT III
### (Professional Malpractice as to Chicago Title)

46. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-45 above as and for this ¶ 46.

47. BSC failed to prepare the BSC Surveys and certify them to Chicago Title with the ordinary and reasonable skill usually exercised by professional land surveyors.

48. BSC's professional malpractice has caused Chicago Title to suffer damages.

## COUNT IV
### (Violation of c.93A as to Chicago Title)

49. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-48 above as and for this ¶ 49.

50. At all times relevant to this Third-Party Complaint, BSC and Chicago Title were engaged in trade or commerce within the Commonwealth of Massachusetts.

51. BSC's false certifications to Chicago Title of the BSC Surveys, and its failure to prepare the BSC Surveys in accordance with 250 CMR 6.00 et seq., constitute unfair and deceptive acts and practices within the meaning of M.G.L. c.93A, § 2, and the Attorney General's regulations promulgated pursuant to c.93A.

52. BSC's unfair and deceptive acts and practices occurred primarily and substantially in the Commonwealth of Massachusetts.

53. BSC's unfair and deceptive acts and practices caused damage to Chicago Title.

## COUNT V
### (Negligent Misrepresentation to UBS)

54. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-53 above as and for this ¶ 54.

55. UBS Principal Finance is in the business of providing financing to purchasers of real estate.

56. In the course of its business, BSC supplied false information (namely, its certifications of the BSC Surveys) to UBS Principal Finance for its guidance in providing financing to Grove Willow LLC and West Seyon LLC, and in attempting to perfect a security interest in the Raytheon Property and its structures.

57. UBS Principal Finance justifiably relied upon BSC's certifications of the BSC Surveys in providing financing first to Grove Willow LLC, and later West Seyon LLC, and in attempting to perfect a security interest in the Raytheon Property and its structures.

58. BSC's false certifications of the BSC Surveys caused UBS Principal Finance not to perfect a security interest in the Raytheon Property.

59. BSC failed to exercise the reasonable care and competence of a professional land surveyor in certifying the BSC Surveys to UBS Principal Finance.

60. UBS has suffered damages on account of BSC's false certification of the BSC Surveys.

61. As an assignee and subrogee of UBS, Chicago Title is entitled to recover those damages suffered by UBS on account of BSC's false certification of the BSC Surveys.

## COUNT VI
### (Negligence as to UBS)

62. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-61 above as and for this ¶ 62.

63. BSC owed a duty to UBS Principal Finance to provide an accurate survey of the Raytheon Property, and an accurate certification of that survey, inasmuch as BSC knew, or should have foreseen, that UBS Principal Finance would rely upon the BSC Surveys and BSC's certifications of the BSC Surveys in lending to Grove Willow LLC and West Seyon LLC, and in attempting to perfect a security interest in the Raytheon Property and its structures.

64. BSC failed to provide an accurate survey of the Raytheon Property, and an accurate certification of that survey, to UBS Principal Finance.

65. BSC's negligent preparation and certification of the BSC Surveys caused UBS to suffer damages.

66. As an assignee and subrogee of UBS, Chicago Title is entitled to recover those damages suffered by UBS on account of BSC's negligent preparation and certification of the BSC Surveys.

## COUNT VII
### (Professional Malpractice as to UBS)

67. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-66 above as and for this ¶ 67.

68. BSC failed to prepare the BSC Surveys and certify them to UBS Principal Finance with the ordinary and reasonable skill usually exercised by professional land surveyors.

69. BSC's professional malpractice has caused UBS to suffer damages.

70. As an assignee and subrogee of UBS, Chicago Title is entitled to recover those damages suffered by UBS on account of BSC's professional malpractice.

## COUNT VIII
### (Violation of c.93A as to UBS)

71. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-70 above as and for this ¶ 71.

72. At all times relevant to this Third-Party Complaint, BSC and UBS Principal Finance were engaged in trade or commerce within the Commonwealth of Massachusetts.

73. BSC's false certifications to UBS Principal Finance of the BSC Surveys, and its failure to prepare the BSC Surveys in accordance with 250 CMR 6.00 et seq., constitute unfair and deceptive acts and practices within the meaning of M.G.L. c.93A, § 2, and the Attorney General's regulations promulgated pursuant to c.93A.

74. BSC's unfair and deceptive acts and practices occurred primarily and substantially in the Commonwealth of Massachusetts.

75. BSC's unfair and deceptive acts and practices caused damage to UBS.

76. As an assignee and subrogee of UBS, Chicago Title is entitled to recover those damages suffered by UBS on account of BSC's violations of c.93A.

## COUNT IX
### (Indemnity)

77. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-76 above as and for this ¶ 77.

78. In its First Amended Complaint in this action, Stewart Title claims that Chicago Title is obligated to reimburse Stewart Title for one half of all amounts tendered by Stewart Title to compensate UBS for any loss under the Policies, and one half of Stewart Title's costs and expenses.

79. UBS's claims for loss against Stewart Title, and in turn Stewart Title's claims against Chicago Title, arise from the BSC Surveys and BSC's false certifications of the BSC Surveys.

80. To the extent that Stewart Title is awarded any damages for its claims against Chicago Title, BSC must indemnify Chicago Title for all such damages, plus costs of defense and attorneys' fees.

FOR THESE REASONS, Chicago Title Insurance Company asks this Court to:

A. Enter judgment in its favor, and against Stewart Title Guaranty Company, on Count VI of Stewart Title's First Amended Complaint;

B. Enter judgment in its favor, and against BSC Group, Inc., on Chicago Title's Third-Party Complaint;

C. Award Chicago Title its damages in an amount to be proven at trial, plus its costs and expenses, including attorneys' fees;

D. Award Chicago Title multiple damages, its costs and expenses (including attorneys fees) pursuant to c.93A; and

E.   Grant such other and further relief as is just and appropriate.

CHICAGO TITLE INSURANCE COMPANY,

By its attorneys,

*/s/ Bruce S. Barnett*

E. Randolph Tucker (BBO #503845)
Michael D. Vhay (BBO #566444)
Bruce S. Barnett (BBO # 647666)
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA  02110-2613
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated: January 7, 2005.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served by first class U.S. mail on counsel for each other party on the 7th day of January 2005.

*/s/ Bruce S. Barnett*

Bruce S. Barnett