UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEWART TITLE GUARANTY COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>UBS PRINCIPAL FINANCE LLC, et al.,<br><br>    Defendants. | Civil Action No. 04-10783-GAO |
| CHICAGO TITLE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>BSC GROUP, INC., et al.,<br><br>    Defendants. | Civil Action No. 05-10046-GAO |

**FIRST AMENDED CONSOLIDATED COMPLAINT**

Plaintiffs Stewart Title Guaranty Company ("Stewart") and Chicago Title Insurance Company ("Chicago Title") (the latter, on its own behalf and as subrogee and assignee of UBS Principal Finance LLC, I-Park Grove Willow LLC and I-Park West Seyon LLC (collectively, "UBS")), bring this consolidated complaint against defendants BSC Group, Inc. and BSC Companies, Inc. (formerly known as The BSC Group, Inc.) (together, "BSC") to recover damages resulting from BSC's negligent surveys of a property insured by Stewart and Chicago Title.

~BOST1:386970.v3

**Parties**

1.  Plaintiff Stewart is a Texas corporation that has its principal place of business in Houston, Texas. Stewart is in the business of providing title insurance to property owners and lenders.

2.  Plaintiff Chicago Title is a Missouri corporation that has its principal place of business in Chicago, Illinois. Chicago Title is in the business of providing title insurance to property owners and lenders.

3.  Defendants BSC Group, Inc. and BSC Companies, Inc. are Massachusetts corporations that have their principal places of business in Boston, Massachusetts. BSC is in the business of providing professional surveys.

**Jurisdiction and Venue**

4.  This Court has jurisdiction over this consolidated complaint pursuant to 28 U.S.C. § 1332, as Stewart, Chicago Title and BSC are residents of different states and the amount in controversy between Stewart and BSC, and between Chicago Title and BSC, in each case exceeds $75,000, exclusive of interest and costs.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as BSC resides in this district; a substantial part of the events or omissions giving rise to Stewart and Chicago Title's claims occurred in this district; and the property that is the subject of this action is in this district.

**Factual Background**

6.  Prior to 1999, Raytheon Company ("Raytheon") had acquired various parcels of land in the vicinity of Willow, Grove, Seyon and Farwell Streets and Foundry Avenue in

Waltham, Massachusetts, and Pleasant Street in Watertown, Massachusetts (the "Raytheon Property"). The Raytheon Property straddles the Waltham/Watertown town line.

7. Between 1999 and 2001, in the regular course of its business, BSC was commissioned to prepare several surveys of the Raytheon Property, and BSC did prepare several surveys (the "BSC Surveys"). BSC knew that the BSC Surveys were to be used in connection with the sale and/or financing of the Raytheon Property.

8. BSC prepared a survey titled "ALTA/ACSM Land Title Survey in Waltham/Watertown, Massachusetts (Middlesex County) Raytheon Company" dated August 9, 1999, revised October 18, 1999, December 26, 1999, and December 28, 1999 (the "BSC 1999 Survey"). A copy of the BSC 1999 Survey is attached as Exhibit A to the Complaint of Chicago Title filed in Civil Action No. 05-10046 on January 7, 2005 (the "Chicago Title Complaint").

9. BSC prepared a survey titled "ALTA/ACSM Land Title Survey, Waltham/Watertown, 47 Foundry Street, 190 Willow Street, 20 & 28 Seyon Street, 36 River Street, in Waltham/ Watertown, Massachusetts (Middlesex County)," dated August 9, 1999, revised October 18, 1999, December 26, 1999, December 28, 1999 and updated November 6, 2000 (the "BSC 2000 Survey"). A copy of the BSC 2000 Survey is attached as Exhibit B to the Chicago Title Complaint.

10. BSC prepared a survey titled "Plan of Land in Waltham/Watertown, Massachusetts (Middlesex County) Raytheon Company," dated December 27, 1999, which was recorded with the Middlesex Registry of Deeds as Plan No. 1497 of 1999 (the "BSC Recorded Survey"). A copy of the BSC Recorded Survey is attached as Exhibit C to the Chicago Title Complaint.

11. BSC prepared a survey titled "Plan of Land in Waltham, Massachusetts (Middlesex County) West of Seyon Street," dated February 5, 2001 (the "BSC West of Seyon Survey"). A copy of the BSC West of Seyon Survey is attached as <u>Exhibit D</u> to the Chicago Title Complaint.

12. BSC prepared a survey titled "Plan of Land in Waltham/Watertown, Massachusetts (Middlesex County) East of Seyon Street," dated February 5, 2001 (the "BSC East of Seyon Survey"). A copy of the BSC East of Seyon Survey is attached as <u>Exhibit E</u> to the Chicago Title Complaint.

13. In 1999, BSC certified the BSC 1999 Survey to Chicago Title.

14. In 2000 and 2001, BSC certified the BSC 2000 Survey, the BSC West of Seyon Survey, and the BSC East of Seyon Survey to UBS Principal Finance, Stewart and Chicago Title.

15. BSC's certifications stated, among other things, that the surveys "correctly show[] (i) the facts found at the time of the survey, (ii) the location of all buildings, structures and other improvements situated on the above premises, [and] (iii) the course and measured distances of the exterior property lines of the premises and any setbacks or easements located on or affecting the said premises."

16. BSC inaccurately determined the property lines of the Raytheon Property, inaccurately plotted portions of the metes and bounds descriptions on the BSC Surveys, inaccurately plotted the location of buildings and improvements on the Raytheon Property, and failed to show the true facts relating to the Raytheon Property at the time of its surveys, all causing its certifications to UBS Principal Finance, Stewart and Chicago Title to be false.

17. The BSC Surveys formed the basis for the description of a property (the "Deeded Property") that is not the Raytheon Property but which nevertheless appeared in (a) a deed by

which Raytheon (intending to convey the Raytheon Property) conveyed the Deeded Property to Grove Willow LLC; (b) a mortgage from Grove Willow LLC (intending to mortgage the Raytheon Property) to Lehman Brothers Holdings Inc., granting a security interest in the Deeded Property; (c) "Schedule A" of a policy of title insurance issued by Chicago Title to Lehman Brothers Holdings Inc. insuring that mortgage (the "Lehman Brothers Policy"); (d) a deed by which Grove Willow LLC (intending to convey a portion of the Raytheon Property) subsequently conveyed a portion of the Deeded Property to West Seyon LLC; (e) mortgages from Grove Willow LLC and West Seyon LLC (each intending to mortgage parcels comprising the Raytheon Property) to UBS Principal Finance, granting a security interest in the Deeded Property; and (f) "Schedule A" of two policies (the "UBS Policies") of title insurance issued by Chicago Title to UBS Principal Finance insuring those mortgages. The UBS Policies are Nos. 2051-25376, dated December 19, 2000, in the original amount of $44,250,000, as amended; and 2151-25005, dated March 2, 2001, in the original amount of $16,750,000, as amended. Stewart issued co-insurance endorsements in connection with the UBS Policies.

18. The UBS Policies insured that, subject to their terms, conditions and stipulations, UBS Principal Finance held a first lien of record on the Deeded Property as it purportedly had been conveyed to Grove Willow LLC and West Seyon LLC. The Deeded Property comprised Lot A (Parcels 1, 3, 4, 5, 6, 7, 8, 9, 10, 16 and 17), Lot B (Parcel 2), Lot C (Parcels 11, 12, 13, 14 and 15), and Lot D (Parcel 18), as more particularly described in Schedule "A" of the UBS Policies.

19. BSC provided its certifications of the BSC Surveys knowing that UBS Principal Finance would rely upon them in attempting to perfect a security interest in the Raytheon Property and its structures.

20. In 2000 and in 2001, UBS Principal Finance relied upon BSC's certifications of the BSC Surveys in lending funds to Grove Willow LLC and West Seyon LLC, and in attempting to perfect a security interest in the Raytheon Property and its structures.

21. BSC provided its certifications of the BSC Surveys knowing that Chicago Title would rely upon them in issuing the Lehman Brothers and UBS Policies.

22. BSC provided its certifications of the BSC Surveys knowing that Stewart would rely upon them in issuing its co-insurance endorsements of the UBS Policies.

23. In 2000 and in 2001, Chicago Title relied upon BSC's certifications of the BSC Surveys in issuing the Lehman Brothers and UBS Policies.

24. In 2000 and in 2001, Stewart relied upon BSC's certifications of the BSC Surveys in issuing its co-insurance endorsements of the UBS Policies.

25. BSC failed to exercise reasonable care and competence in preparing the BSC Surveys.

26. BSC failed to exercise reasonable care and competence in certifying the BSC Surveys to UBS Principal Finance, Stewart and Chicago Title.

27. BSC did not prepare the BSC Surveys in accordance with the standards applicable to an ALTA/ACSM survey and other applicable standards, including, but not limited to, 250 C.M.R. 6.00 et seq.

28. Before 2002, UBS, Stewart and Chicago Title were unaware that the BSC Surveys were inaccurate, or that BSC's 1999, 2000 and 2001 certifications of the BSC Surveys were false.

29. In February 2003, UBS Principal Finance assigned its interests in the Deeded Property to two special purpose entities, I-Park Grove Willow LLC (assignee of the interests in

Lot C) and I-Park West Seyon LLC (assignee of the interests in Lots A, B and D), which then foreclosed on their respective liens. At February 2003 foreclosure auctions, I-Park Grove Willow LLC and I-Park West Seyon LLC purchased the lots in which they had held security interests; they continue to hold record ownership of the fee title.

30. In early 2003, UBS learned that the BSC Surveys contained errors.

31. In March 2003, UBS asserted claims against Chicago Title and Stewart under the UBS Policies (the "UBS Claims").

32. UBS concluded that it did not hold title to certain portions of the Deeded Property insured by the UBS Policies, inasmuch as title to those portions was held by abutting property owners. UBS also concluded that the BSC Surveys inaccurately portrayed the location of buildings on the Raytheon Property and that errors in the surveys had (a) caused the mislocation of a ground-water treatment system; (b) adversely affected the marketability of the Deeded Property; and (c) required demolition and reconstruction of a portion of a structure on the Deeded Property.

33. UBS originally estimated that it had incurred damages in excess of $4,275,046 on account of the inaccuracies in the BSC Surveys. UBS contended that Stewart and Chicago Title were liable to pay UBS in excess of $4,275,046 under the UBS Policies, and that UBS had suffered additional losses, costs and damages on account of the inaccuracies in the BSC Surveys.

34. On April 22, 2004, Chicago Title entered into an agreement with UBS (the "Chicago Title Settlement Agreement") settling Chicago Title's potential liability for the UBS Claims. A redacted copy of the Chicago Title Settlement Agreement is attached as <u>Exhibit F</u> to the Chicago Title Complaint.

35. Pursuant to the Chicago Title Settlement Agreement, Chicago Title has paid UBS in excess of $75,000 with respect to the UBS Claims.

36. Pursuant to the Chicago Title Settlement Agreement, UBS has transferred and assigned to Chicago Title all of its right, title and interest in any and all claims against BSC that relate to the BSC Surveys or the UBS Claims.

37. Stewart entered into an agreement with UBS dated October 13, 2004 (the "Stewart Settlement Agreement") settling Stewart's potential liability for the UBS Claims.

38. Pursuant to the Stewart Settlement Agreement, Stewart has paid UBS $605,000 and has incurred costs and expenses in excess of $200,000 with respect to the UBS Claims.

## COUNT I
### (Negligent Misrepresentation to Stewart and Chicago Title)

39. Stewart and Chicago Title incorporate by reference the allegations set forth in ¶¶ 1-38 above as and for this ¶ 39.

40. BSC is in the business of providing professional land surveys.

41. Stewart and Chicago Title are in the business of providing title insurance to property owners and lenders.

42. In the course of its business, BSC supplied false information (namely, its certifications of the BSC Surveys) to Chicago Title for its guidance in issuing the Lehman Brothers and UBS Policies.

43. In the course of its business, BSC supplied false information (namely, its certifications of the BSC Surveys) to Stewart for its guidance in issuing a co-insurance endorsement of the UBS Policies.

44. Chicago Title justifiably relied upon BSC's certifications of the BSC Surveys in issuing the Lehman Brothers and UBS Policies.

45. Stewart justifiably relied upon BSC's certifications of the BSC Surveys in issuing a co-insurance endorsement of the UBS Policies.

46. BSC's false certifications of the BSC Surveys caused Chicago Title to issue the Lehman Brothers and UBS Policies. As a result of issuing the Policies, Chicago Title incurred liability to UBS on account of the UBS Claims, which likewise are a result of BSC's false certifications.

47. BSC's false certifications of the BSC Surveys caused Stewart to issue a co-insurance endorsement of the UBS Policies. As a result of endorsing the Policies, Stewart incurred liability to UBS on account of the UBS Claims, which likewise are a result of BSC's false certifications.

48. BSC failed to exercise the reasonable care or competence of a professional land surveyor in certifying the BSC Surveys to Stewart and Chicago Title.

49. Stewart and Chicago Title have suffered damages on account of BSC's false certifications of the BSC Surveys.

## COUNT II
**(Negligence as to Stewart and Chicago Title)**

50. Stewart and Chicago Title incorporate by reference the allegations set forth in ¶¶ 1-49 above as and for this ¶ 50.

51. BSC owed a duty to Chicago Title to provide an accurate survey of the Raytheon Property, and an accurate certification of that survey, inasmuch as BSC knew, or should have foreseen, that Chicago Title would rely upon the BSC Surveys and BSC's certifications of the BSC Surveys in issuing the Lehman Brothers and UBS Policies.

52. BSC owed a duty to Stewart to provide an accurate survey of the Raytheon Property, and an accurate certification of that survey, inasmuch as BSC knew, or should have

foreseen, that Stewart would rely upon the BSC Surveys and BSC's certifications of the BSC Surveys in issuing a co-insurance endorsement of the UBS Policies.

53. BSC failed to provide an accurate survey of the Raytheon Property, and an accurate certification of that survey, to Stewart and Chicago Title.

54. BSC's negligent preparation and certification of the BSC Surveys caused Stewart and Chicago Title to suffer damages.

## COUNT III
### (Professional Malpractice as to Stewart and Chicago Title)

55. Stewart and Chicago Title incorporate by reference the allegations set forth in ¶¶ 1-54 above as and for this ¶ 55.

56. BSC failed to prepare the BSC Surveys and certify them to Stewart and Chicago Title with the ordinary and reasonable skill usually exercised by professional land surveyors.

57. BSC's professional malpractice has caused Stewart and Chicago Title to suffer damages.

## COUNT IV
### (Violation of c.93A as to Stewart and Chicago Title)

58. Stewart and Chicago Title incorporate by reference the allegations set forth in ¶¶ 1-57 above as and for this ¶ 58.

59. At all times relevant to this Complaint, BSC, Stewart and Chicago Title were engaged in trade or commerce within the Commonwealth of Massachusetts.

60. BSC's false certifications to Stewart and Chicago Title of the BSC Surveys, and its failure to prepare the BSC Surveys in accordance with 250 CMR 6.00 et seq., constitute unfair and deceptive acts and practices within the meaning of M.G.L. c.93A, § 2, and the Attorney General's regulations promulgated pursuant to c.93A.

61.  BSC's unfair and deceptive acts and practices occurred primarily and substantially in the Commonwealth of Massachusetts.

62.  BSC's unfair and deceptive acts and practices caused damage to Stewart and Chicago Title.

## COUNT V
### (Negligent Misrepresentation to UBS)

63.  Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-62 above as and for this ¶ 63.

64.  UBS Principal Finance is in the business of providing financing to purchasers of real estate.

65.  In the course of its business, BSC supplied false information (namely, its certifications of the BSC Surveys) to UBS Principal Finance for its guidance in providing financing to Grove Willow LLC and West Seyon LLC, and in attempting to perfect a security interest in the Raytheon Property and its structures.

66.  UBS Principal Finance justifiably relied upon BSC's certifications of the BSC Surveys in providing financing first to Grove Willow LLC, and later West Seyon LLC, and in attempting to perfect a security interest in the Raytheon Property and its structures.

67.  BSC's false certifications of the BSC Surveys caused UBS Principal Finance not to perfect a security interest in the Raytheon Property.

68.  BSC failed to exercise the reasonable care and competence of a professional land surveyor in certifying the BSC Surveys to UBS Principal Finance.

69.  UBS has suffered damages on account of BSC's false certification of the BSC Surveys.

70. As an assignee and subrogee of UBS, Chicago Title is entitled to recover those damages suffered by UBS on account of BSC's false certification of the BSC Surveys.

## COUNT VI
### (Negligence as to UBS)

71. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-70 above as and for this ¶ 71.

72. BSC owed a duty to UBS Principal Finance to provide an accurate survey of the Raytheon Property, and an accurate certification of that survey, inasmuch as BSC knew, or should have foreseen, that UBS Principal Finance would rely upon the BSC Surveys and BSC's certifications of the BSC Surveys in lending to Grove Willow LLC and West Seyon LLC, and in attempting to perfect a security interest in the Raytheon Property and its structures.

73. BSC failed to provide an accurate survey of the Raytheon Property, and an accurate certification of that survey, to UBS Principal Finance.

74. BSC's negligent preparation and certification of the BSC Surveys caused UBS to suffer damages.

75. As an assignee and subrogee of UBS, Chicago Title is entitled to recover those damages suffered by UBS on account of BSC's negligent preparation and certification of the BSC Surveys.

## COUNT VII
### (Professional Malpractice as to UBS)

76. Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-75 above as and for this ¶ 76.

77. BSC failed to prepare the BSC Surveys and certify them to UBS Principal Finance with the ordinary and reasonable skill usually exercised by professional land surveyors.

78. BSC's professional malpractice has caused UBS to suffer damages.

79.     As an assignee and subrogee of UBS, Chicago Title is entitled to recover those damages suffered by UBS on account of BSC's professional malpractice.

## COUNT VIII
### (Violation of c.93A as to UBS)

80.     Chicago Title incorporates by reference the allegations set forth in ¶¶ 1-79 above as and for this ¶ 80.

81.     At all times relevant to this Complaint, BSC and UBS Principal Finance were engaged in trade or commerce within the Commonwealth of Massachusetts.

82.     BSC's false certifications to UBS Principal Finance of the BSC Surveys, and its failure to prepare the BSC Surveys in accordance with 250 CMR 6.00 et seq., constitute unfair and deceptive acts and practices within the meaning of M.G.L. c.93A, § 2, and the Attorney General's regulations promulgated pursuant to c.93A.

83.     BSC's unfair and deceptive acts and practices occurred primarily and substantially in the Commonwealth of Massachusetts.

84.     BSC's unfair and deceptive acts and practices caused damage to UBS.

85.     As an assignee and subrogee of UBS, Chicago Title is entitled to recover those damages suffered by UBS on account of BSC's violations of c.93A.


FOR THESE REASONS, Stewart Title Guaranty Company and Chicago Title Insurance Company ask this Court to:

A.      Enter judgment in their favor, and against BSC Group, Inc. and BSC Companies, Inc., on their First Amended Consolidated Complaint;

B.      Award Stewart and Chicago Title their damages in an amount to be proven at trial, plus their costs and expenses, including attorneys' fees;

C.      Award Stewart and Chicago Title multiple damages, their costs and expenses (including attorneys fees) pursuant to c.93A; and

    D.    Grant such other and further relief as is just and appropriate.

| STEWART TITLE GUARANTY COMPANY, | CHICAGO TITLE INSURANCE COMPANY, |
|---|---|
| By its attorneys, | By its attorneys, |
| \_\_\_\_\_/s/ Thomas M. Looney_____ | \_\_\_/s/ Michael D. Vhay_____ |
| Thomas M. Looney (BBO #555040) | E. Randolph Tucker (BBO #503845) |
| Richard E. Gentilli (BBO #189080) | Michael D. Vhay (BBO #566444) |
| BARTLETT HACKETT FEINBERG, PC | Bruce S. Barnett (BBO # 647666) |
| 10 High Street, Suite 920 | DLA PIPER RUDNICK GRAY CARY US LLP |
| Boston, MA 02110 | One International Place, 21st Floor |
| (617) 422-0200 (*telephone*) | Boston, MA 02110-2613 |
| (617) 896-6274 (fax) | (617) 406-6000 (*telephone*) |
|  | (617) 406-6100 (*fax*) |

Dated: September 12, 2005